1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HUMPHREY LAU,

11              Plaintiff,                   No. CIV S-10-2129 MCE DAD PS

12        v.

13   KATHI PYLMAN, et al,

14              Defendants.          ORDER

15   _____/

16            This matter came before the court on October 8, 2010, for hearing of defendants'

17   Federal Home Loan Mortgage Corporation and Homesteps motion to dismiss plaintiff's

18   complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Humphrey Lau, who is

19   proceeding pro se in this action, appeared telephonically on his own behalf.  Attorney Brent

20   Kramer appeared telephonically for defendants Federal Home Loan Mortgage Corporation and

21   Homesteps.  Oral argument was heard, and defendants' motion was taken under submission.

22            Upon consideration of the briefing on file, the parties' arguments at the hearing,

23   and the entire file, the court will grant defendants' motion to dismiss.  However, in light of the

24   plaintiff's pro se status and for the reasons set forth below, the court will also grant plaintiff leave

25   to amend his complaint to attempt to allege a cognizable claim.

26   /////

1

1                                    BACKGROUND

2              Plaintiff originally commenced this action by filing his complaint in the

3    Sacramento County Superior Court on June 30, 2010.  On August 9, 2010, defendant Federal

4    Home Loan Mortgage Corporation, removed this action to this court pursuant to 28 U.S.C. §§

5    1331 and 1442, and 12 U.S.C. § 1452(f).  (Doc. No. 2)

6              On August 16, 2010, counsel for defendants Federal Home Loan Mortgage

7    Corporation and Homesteps filed the motion to dismiss now pending before the court.  ("MTD"

8    (Doc. No. 5.))  Plaintiff filed an opposition on September 2, 2010, ("Opp'n." (Doc. No. 10)), and

9    defendants filed a reply on October 1, 2010.  ("Reply" (Doc. No. 16.))

10                                 PLAINTIFF'S CLAIMS

11             In his complaint, plaintiff alleges as follows.  On or about January 5, 2010,

12   plaintiff employed defendant Pylman and defendant Lyon to act as his agents in purchasing the

13   property located at 6304 Gus Way, Elk Grove, California ("Property"), which was owned by

14   defendant Federal Home Loan Mortgage Corporation and defendant Homesteps (collectively

15   "Defendant Sellers").[1]

16             Plaintiff sent defendant Sellers a proposed purchase agreement ("Offer") on

17   January 5, 2010.  On January 13, 2010, defendant Sellers sent plaintiff a counteroffer that

18   provided, in relevant part, that Sellers would agree to pay up to 3.5% of plaintiff's closing costs

19   and to pay $1,100 for a two-year home warranty.  Plaintiff signed the counteroffer on January 15,

20   2010, and emailed it back to defendant Pylman.  On January 21, 2010, defendant Currie, acting

21   as an agent for defendant Sellers, informed defendant Pylman that plaintiff's offer was

22   "confirmed."[2]  However, despite plaintiff's requests, defendant Sellers would not send plaintiff

23

24          [1]  Defendant Pylman and defendant Lyon have not appeared in this action.

25          [2]  Plaintiff does not elaborate as to whether "confirmed" is meant to indicate that his offer
     was received or that his offer was accepted.  The court notes, in this regard, that defendant Currie
26   has not appeared in this action.

1   an executed sales agreement.

2           On January 27, 2010, defendant Currie sent plaintiff several documents for

3   plaintiff's signature.  Among the documents was a seven-page addendum ("Addendum #1") to

4   the purchase agreement and counteroffer.  Addendum #1 added several new terms and condition

5   which had not previously been part of either the offer or counteroffer.  One such condition was

6   that in the event of a conflict between a provision of the contract of sale and the addendum, the

7   provisions of the addendum would control.

8           Upon examining addendum #1 plaintiff discovered that the document indicated

9   that plaintiff intended to occupy the property even though plaintiff did not intend to do so.

10  Plaintiff then examined the January 5, 2010 offer and discovered that document also erroneously

11  indicated that plaintiff intended to occupy the property.  At all times plaintiff had informed

12  defendant Pylman that he did not intend to occupy the property.

13          Plaintiff corrected addendum #1 to indicate that he did not intend to occupy the

14  property, signed the document and returned it to defendant Pylman on February 1, 2010.  As of

15  February 1, 2010, plaintiff still had not received a signed purchase agreement from defendant

16  Sellers reflecting the terms of the offer and counteroffer.  While awaiting the signed documents,

17  plaintiff began working with defendant Pylman and others to obtain financing for the purchase of

18  the property.  During that process plaintiff was informed that because he did not intend to occupy

19  the property, the defendant Sellers would only pay 2% of plaintiff's closing costs, not the

20  previously offered 3.5%.

21          Plaintiff asked defendant Pylman to obtain defendant Sellers' agreement to the

22  original 3.5% term.  Defendant Pylman responded that although the Sellers were now only going

23  to pay 2% of the closing costs, they also had agreed to pay all escrow fees, title fees and the

24  transfer tax.  Relying on Pylman's representation that the defendant Sellers would pay the escrow

25  fees, title fees and the transfer tax, plaintiff reluctantly agreed to the new condition that the

26  /////

3

1   defendant Sellers would pay only 2% of plaintiff's closing costs and proceeded to order an

2   appraisal of the property.

3            On March 29, 2010, plaintiff signed the closing documents for the purchase of the

4   Property.  Among those documents was an estimation of the closing cost.  That document

5   indicated that the defendant Sellers were to credit plaintiff $6,946.69 towards his closing costs.

6   On March 31, 2010, defendant Pylman emailed plaintiff another addendum, (Addendum #2), that

7   indicated that the defendant Sellers would only pay 2% of those closing costs.  Plaintiff initially

8   refused to sign addendum #2.  However, defendant Pylman told plaintiff that the signing of

9   addendum #2 would not change the amount of money plaintiff had to pay under the agreement

10  because the parties had already identified in the agreement the specific dollar amounts each was

11  going to pay.  Again, relying on defendant Pylman's representations, plaintiff signed addendum

12  #2.[3]  On April 3, 2010, plaintiff received another document estimating his closing costs.  This

13  new estimate indicated that the defendant Sellers were now only going to credit $4,898 toward

14  those closing costs.

15           Plaintiff again protested to defendant Pylman.  This time defendant Pylman told

16  plaintiff that nothing could be done and that if plaintiff did not pay the additional closing costs he

17  would lose the deal and his $2,500 earnest money deposit.  Feeling pressured and exhausted,

18  plaintiff reluctantly wired the additional money to the title company on the morning of April 5,

19  2010.  However, later that afternoon the defendant Sellers indicated that they were refusing to

20  pay the escrow fees and transfer tax.  Plaintiff was told that he would now have to also pay these

21  fees or the deal would fall through.  This time, plaintiff refused to pay the additional costs.

22           As a result of the defendant Sellers' actions plaintiff lost $66,126.60 he paid to the

23  escrow company, his $2,500 earnest money deposit, $375 for a home inspection fee, $625 for an

24  appraisal, additional incidental expenses, hours of wasted time and other economic damages.

25

26        [3]  Though plaintiff attached various documents to his complaint, he did not attach a copy
    of this Addendum #2.

1  Plaintiff also suffered extreme emotional distress and mental anguish.  (Notice of Removal, Ex.

2  A.  ("Compl." Doc. No. 2-2), at 3-8.)[4]

3        Based on these factual allegations, plaintiff claims that the defendant Sellers are

4  liable for breach of contract, intentional and negligent misrepresentation, the intentional and

5  negligent infliction of emotional distress, and unlawful and unfair business practices.  (Id. at 1-

6  16.)

7                    ARGUMENTS OF THE PARTIES

8        Defendant Sellers seek dismissal of plaintiff's complaint pursuant to Federal Rule

9  of Civil Procedure 12(b)(6) on the ground that plaintiff has failed to state any cognizable claim.

10  Specifically, defendants argue that plaintiff's complaint fails to state a claim because: (1) the

11  defendant Sellers did not breach any contract; (2) plaintiff has failed to allege any representation

12  was made to him by the defendant Sellers; (3) plaintiff has failed to allege that the defendant

13  Sellers owed plaintiff any duty of care; (4) plaintiff's negligent infliction of emotional distress

14  claim fails because the defendant Sellers did not owe plaintiff a duty of care; and (5) plaintiff's

15  unlawful and unfair business practices claim fails because plaintiff has failed to state any claim

16  for relief.  (MTD (Doc. No. 5) at 8-18.)

17        In opposing defendants' motion, plaintiff addresses each of defendants' arguments

18  and reasserts his claims for relief.  (Opp'n. (Doc. No. 10) at 4-12.)

19        In reply, defendants merely repeat their contention that plaintiff's complaint fails

20  to state a claim for all the reasons set forth in defendants' motion to dismiss.  (Reply (Doc. No.

21  16) at 2-9.)

22            LEGAL STANDARDS APPLICABLE TO DEFENDANT'S MOTION

23        The purpose of a motion to dismiss brought pursuant to Rule 12(b) (6) is to test

24  the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581

25

26        [4] Page number citations such as this one are to the page number reflected on the court's
CM/ECF system and not to page numbers assigned by the parties.

5

1   (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence

2   of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't,

3   901 F.2d 696, 699 (9th Cir. 1990).  The plaintiff is required to allege "enough facts to state a

4   claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

5   (2007).

6           In determining whether a complaint states a claim on which relief may be granted,

7   the court accepts as true the allegations in the complaint and construes the allegations in the light

8   most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

9   United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

10  stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,

11  520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

12  form of factual allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  The

13  court is permitted to consider material which is properly submitted as part of the complaint,

14  documents not physically attached to the complaint if their authenticity is not contested and the

15  plaintiff's complaint necessarily relies on them, and matters of public record.  Lee v. City of Los

16  Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

17                                              ANALYSIS

18  I.  Breach of Contract

19          Defendants argue that plaintiff's breach of contract claim must be dismissed for

20  failing to state claim upon which relief can be granted.  Specifically, defendants contend that

21  even taking the allegations of the complaint as true, plaintiff failed to perform his part of the

22  contract because he did not ultimately purchase the Property.  Defendants further argue that

23  plaintiff concedes in his complaint that he signed addendum #2 which provided that the Sellers

24  would pay only 2% of the closing costs with respect to the transaction.  Finally, defendants argue

25  that even if there were a breach of contract, plaintiff has failed to adequately allege that his

26  damages were proximately caused by the defendant Sellers and, moreover, that plaintiff cannot as

1  a matter of law seek recovery of damages for emotional distress for a breach of contract.[5]  (MTD

2  (Doc. No. 5) at 8-10.)

3           Under California law, to state a claim for breach of contract, plaintiff must allege

4  facts showing: 1) the existence of the contract; 2) plaintiff's performance or excuse for

5  nonperformance of the contract; 3) defendant's breach of the contract; and 4) resulting damages.

6  Recihert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968); Armstrong Petrol Corp. v. Tri Valley

7  Oil & Gas Co., 116 Cal. App.4th 1375, 1391 n. 6 (2004).  Here plaintiff has alleged that the

8  defendant Sellers breached the contract in question by refusing to pay 3.5% of the closing costs.

9  However, plaintiff acknowledges that "[r]elying on the representations of defendant Mattos and

10  defendant Pylman . . . plaintiff reluctantly agreed" to the terms of addendum #2, which provided

11  that the Sellers would only pay 2% of plaintiff's closing costs.[6]  (Compl. (Doc. No. 2-2) at 4-5.)

12  While plaintiff alleges that he agreed to accept the 2% term only because Mattos and Pylman

13  assured him that the Sellers would also pay the transfer tax and escrow fees, he does not allege

14  that the Sellers actually agreed to pay those costs as part of the offer, counteroffer, addendum #1

15  or addendum #2.  In this regard, plaintiff has not alleged that the defendant Sellers breached the

16  terms of the contract, since as part of Addendum #2 plaintiff and the Sellers agreed that the

17  Sellers would pay only 2% of plaintiff's closing cost.[7]  Defendants' motion to dismiss should

18  /////

19

20           [5]  Counsel for defendants has also argues that there could not be a breach of contract
   because under the terms of their counteroffer defendants were only obligated to pay "*up to* 3.5%"
21  of plaintiff's closing costs.  Counsel contends that the "up to" language permitted defendants "to
   provide less than 3.5%" under the terms of the contract and that "the ultimate amount of the
22  closing costs to be paid was left to [Sellers] discretion."  (MTD (Doc. No. 5) at 8-9.)  The court
   finds that argument wholly unpersuasive.

23           [6]  Plaintiff voluntarily dismissed defendant Mattos from this action on August 31, 2010.
   (Doc. No. 12.)
24

25           [7]  In his opposition to the pending motion to dismiss, plaintiff alleges that the defendant
   Sellers also breached the terms of the contract by refusing to pay $1,100 for a two-year home
26  warranty as specified by the contract.  (Opp.'n. (Doc. No 10) at 6.)  Plaintiff acknowledges,
   however, that he did not raise this allegation in his complaint.  (Id.)

7

1  therefore be granted on the ground that plaintiff's allegations fail to state a claim for breach of

2  contract upon which relief may be granted.

3  II.  Intentional Misrepresentation

4          Defendants next contend that plaintiff's claim of intentional misrepresentation

5  must be dismissed due to plaintiff's failure to state a claim upon which relief can be granted.

6  Specifically, defendants argue that plaintiff has failed to allege that the defendants made any

7  intentional misrepresentation.  (MTD (Doc. No. 5) at 10-11.)

8          The elements of an intentional misrepresentation claim under California law are:

9  "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's

10  reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage."  Conroy v.

11  Regents of Univ. of Cal., 45 Cal.4th 1244, 1255 (2009); accord Lazar v. Superior Court, 12

12  Cal.4th 631, 638 (1996).  Where a complaint includes allegations of fraud, Federal Rule of Civil

13  Procedure 9(b) requires more specificity including an account of the "'time, place, and specific

14  content of the false representations as well as the identities of the parties to the

15  misrepresentations.'"  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting

16  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted).  "'To

17  comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of

18  the particular misconduct which is alleged to constitute the fraud charged so that they can defend

19  against the charge and not just deny that they have done anything wrong.'"  Swartz, 476 F.3d at

20  764 (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation, quotations

21  omitted).

22          Here, plaintiff has alleged that defendants Pylman, Mattos and Currie

23  "fraudulently represented that defendant Sellers would pay [a] certain amount of plaintiff's

24  closing costs" despite knowing that defendant Sellers "would not pay such amount of closing

25  costs."  (Compl. (Doc. No. 2-2) at 8.)  Plaintiff's complaint does not allege that defendant the

26  Sellers took part in this, or any other, misrepresentation, let alone set forth allegations recounting

8

1   the time, place and content of any such false representation.  Indeed, plaintiff acknowledges in

2   his opposition to the pending motion to dismiss that he "did not state defendants . . . specific

3   involvement with the misrepresentation." (Opp'n. (Doc. No. 10) at 7.)  Defendants' motion to

4   dismiss should therefore be granted on the ground that plaintiff's allegations fail to state a claim

5   for intentional misrepresentation upon which relief may be granted.

6   III.  Negligent Misrepresentation

7          Defendants also argue that plaintiff's claim of negligent misrepresentation must

8   be dismissed for failure to state a claim upon which relief can be granted.  Specifically,

9   defendants contend that plaintiff has failed to allege that there was any negligent

10  misrepresentation made by the defendant Sellers.  (MTD (Doc. No. 5) at 11-12.)  In this regard,

11  defendants note that plaintiff's allegations relate solely to the conduct of other named defendants.

12  (Id. at 12.)  Moreover, defendants argue that plaintiff has not alleged that the defendant Sellers

13  owed plaintiff a legal duty, that they breached that duty or that the breach of that duty caused

14  plaintiff harm.  (Id.)  Finally defendants contend that plaintiff cannot recover emotional distress

15  damages pursuant to a claim of negligent misrepresentation.  (Id.)

16         As noted above, the elements of a fraud claim under California law are: "(a)

17  misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity

18  (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

19  resulting damage."  Engalla v. Permanente Medical Group, Inc., 15 Cal.4th 951, 974 (1997)

20  (internal quotation marks omitted).  "The same elements comprise a cause of action for negligent

21  misrepresentation, except there is no requirement of intent to induce reliance."  Cadlo v. Owens-

22  Illinois, Inc., 125 Cal. App.4th 513, 519 (2004).  Moreover, a fraud claim plead in federal court

23  must satisfy Rule 9(b)'s pleading requirements.  See Vess v. Ciba-Geigy Corp., 317 F.3d 1097,

24  1103 (9th Cir. 2003).  The same Rule 9(b) pleading requirement applies to plaintiff's negligent

25  misrepresentation claim since it is evident that this claim is "grounded in fraud [and is alleged] to

26  /////

9

1  sound in fraud." <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal

2  quotation marks omitted).

3       Here, plaintiff has alleged that "defendants Pylman, Mattos and Currie . . . made

4  false representations to plaintiff to lure him in [to] completing the purchase of the Property."

5  (Compl. (Doc. No. 2-2) at 9.)  Plaintiff however has not alleged any actions on the part of

6  defendants Sellers that could be characterized as a misrepresentation, negligent or otherwise.  In

7  this regard, even assuming arguendo that plaintiff had stated a cognizable claim for negligent

8  misrepresentation against defendants Pylman, Mattos or Currie, he has alleged no facts

9  implicating the defendant Sellers with respect to that, or any other, alleged misrepresentation.

10  Defendants' motion to dismiss should therefore be granted on the ground that plaintiff's

11  allegations fail to state a claim for negligent misrepresentation against them  upon which relief

12  may be granted.

13  IV.  <u>Intentional Infliction of Emotional Distress</u>

14       Defendants assert that plaintiff's claim for the intentional infliction of emotional

15  distress must be dismissed for failure to state a claim upon which relief can be granted.

16  Specifically, defendants argue that this claim must be dismissed because there are no allegations

17  of extreme and outrageous conduct by defendant Sellers.  Defendants contend that plaintiff's

18  complaint "reveals nothing more than a standard real estate negotiation."  (MTD (Doc. No. 5) at

19  15.)

20       To state a cognizable claim for the intentional infliction of emotional distress

21  under California law a plaintiff must allege: (1) extreme and outrageous conduct by the defendant

22  with the intention of causing, or reckless disregard of the probability of causing, emotional

23  distress; (2) plaintiff's suffering of severe or extreme emotional distress; (3) and actual and

24  proximate causation of the emotional distress by the defendant's outrageous conduct.  <u>Hughes v.

25  Pair</u>, 46 Cal. 4th 1035, 1051 (2009); <u>Christensen v. Superior Court</u>, 54 Cal.3d 868, 903 (1991);

26  /////

1  <u>Cervantez v. J.C. Penney Co.</u>, 24 Cal.3d 579, 593 (1979); <u>see</u> <u>also</u> <u>Corales v. Bennett</u>, 567 F.3d

2  554, 571 (9th Cir. 2009).

3            Here plaintiff has failed to state a cognizable claim because his complaint does

4  not allege facts suggesting that any conduct engaged in by the defendant Sellers was extreme or

5  outrageous.  <u>See</u> <u>Sabow v. United States</u>, 93 F.3d 1445, 1455 (9th Cir. 1996) (affirming dismissal

6  of intentional infliction of emotional distress claim because military investigators' decision to

7  question the plaintiff widow on the morning she found he husband's body, while not "the

8  defendant officers' finest hour," was not so "extreme and outrageous as to be actionable under

9  California law); <u>Davidson v. Westminster</u>, 32 Cal. 3d 197, 209 (1982) (For purposes of such a

10  claim, "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually

11  tolerated in a civilized community.")  Nor does plaintiff's complaint allege specific facts

12  showing that the defendant Sellers acted with the requisite intent or that plaintiff suffered severe

13  or extreme emotional distress as a result of the specific conduct alleged.  Indeed, it appears from

14  the facts alleged in his complaint that plaintiff's only communication with the defendant Sellers

15  was through third-parties and that plaintiff and the defendant Sellers had no direct contact with

16  one another.  Defendants' motion to dismiss should therefore be granted on the ground that

17  plaintiff's allegations fail to state a claim for the intentional infliction of emotional distress upon

18  which relief may be granted.

19  V.  <u>Negligent Infliction of Emotional Distress</u>

20            Defendants contend that plaintiff's claim for the negligent infliction of emotional

21  distress must be dismissed for failure to state a claim upon which relief can be granted.

22  Specifically, defendants argue that this claim must be dismissed because plaintiff has not alleged

23  any duty owing from defendant Sellers to plaintiff.  (MTD (Doc. No. 5) at 16-17.)

24            California does not recognize an independent cause of action for the negligent

25  infliction of emotional distress.  The California Supreme Court "[has] repeatedly recognized that

26  the negligent causing of emotional distress is not an independent tort, but the tort of negligence."

1  Burgess v. Superior Court, 2 Cal.4th 1064, 1072 (1992) (internal citations and quotations

2  omitted) (emphasis in original).  See also  Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965,

3  (1993) ("[T]here is no independent tort of negligent infliction of emotional distress."); Cramer v.

4  Consolidated Freightways, Inc., 209 F.3d 1122, 1133 (9th Cir. 2000) ("The tort of negligent

5  infliction of emotional distress is simply a negligence claim alleging that the defendant breached

6  a duty to protect the plaintiff's mental well-being.")  "The elements of a cause of action for

7  negligence are well established.  They are (a) a legal duty to use due care; (b) a breach of such

8  legal duty; [and] (c) the breach is the proximate or legal cause of the resulting injury."  Ladd v.

9  County of San Mateo, 12 Cal.4th 913, 917 (1996) (internal citations, quotations, and emphasis

10 omitted).  See also Truong v. Nguyen, 156 Cal. App. 4th 865, 875 (2007); Corales, 567 F.3d at

11 572.

12       Here, plaintiff has failed to state a cognizable claim because his complaint does

13 not allege facts suggesting that the defendant Sellers owed him any duty, let alone facts

14 suggesting a breach of any such duty.  In opposing defendants' motion to dismiss plaintiff

15 acknowledges that in his complaint he "did not particularly specify defendants' duty owed to

16 plaintiff" but argues nevertheless that there is a "duty of decency owing not only to plaintiff but

17 to the general public [that] was implied."  (Opp'n. (Doc. No. 10) at 11.)  The court finds such a

18 vague assertion, offered for the first time in plaintiff's opposition to the pending motion to

19 dismiss and without any citation to legal authority, unpersuasive.

20       The court notes that under California law:

21   Tort damages have been permitted in contract cases where a breach
     of duty directly causes physical injury . . . for breach of the
22   covenant of good faith and fair dealing in insurance contracts . . .
     for wrongful discharge in violation of fundamental public policy
23   . . . or where the contract was fraudulently induced.

24                            * * *

25   Generally, outside the insurance context, a tortious breach of
     contract ... may be found when (1) the breach is accompanied by a
26   traditional common law tort, such as fraud or conversion; (2) the

                                    12

> means used to breach the contract are tortious, involving deceit or
> undue coercion or; (3) one party intentionally breaches the contract
> intending or knowing that such a breach will cause severe,
> unmitigable harm in the form of mental anguish, personal hardship,
> or substantial consequential damages.

Erlich v. Menezes, 21 Cal.4th 543, 551-54 (1999). "In each of these cases, the duty that gives

rise to tort liability is either completely independent of the contract or arises from conduct which

is both intentional and intended to harm." (Id. at 552.) As indicated above, here plaintiff has

failed to allege in his complaint the duty the defendant Sellers owed to him and has failed to

allege tortious conduct that was either intentional or intended to harm.

Accordingly, for the reasons stated above, defendants' motion to dismiss should

be granted on the ground that plaintiff's allegations fail to state a claim for the negligent

infliction of emotional distress upon which relief may be granted.

VI.  Unlawful And Unfair Business Practices[8]

Defendants argue that plaintiff's claim of unlawful and unfair business practices

must be dismissed for failure to state a claim upon which relief can be granted because a claim

for unfair, unlawful, and/or fraudulent business practices cannot stand independent of any other

claim.  Moreover, defendants argue that plaintiff's claim fails because he seeks only damages,

while the remedy for a violation of California Business & Professions Code § 17200 is "limited

to injunctive relief." (MTD (Doc. No. 5) at 14.)

California's Unfair Competition Law ("UCL"), California Business & Professions

§§ 17200 et seq., permits recovery for "'any unlawful, unfair or fraudulent business act or

practice.'" Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999)

(quoting CAL. BUS. & PROF. CODE §§ 17200).  See also Wang v. Chinese Daily News, Inc., 623

---

[8]  Although defendant Sellers have moved to dismiss plaintiff's breach of fiduciary duty
claim (MTD (Doc. No. 5) at 12), plaintiff's complaint does not allege that claim against the
defendant Sellers.  Plaintiff acknowledges as much in his opposition to defendants' motion to
dismiss, stating that his breach of fiduciary duty claim was "directed at defendants Plyman and
Lyon only." (Opp'n. (Doc. No 10) at 8.)  Accordingly, the court will not address that claim in its
resolution of the pending motion to dismiss.

1    F.3d 743, 758 (9th Cir. 2010).  "Each of these three prongs constitutes a separate and

2    independent cause of action."  Martinez v. Wells Fargo Home Mortgage, Inc., 598 F.3d 549, 554

3    (9th Cir. 2010) (citing Cel-Tech Communications, Inc., 20 Cal.4th at 180).  "An action based on

4    this statute borrows violations of other laws and treats these violations, when committed pursuant

5    to business activity, as unlawful practices independently actionable under section 17200."  Wang,

6    623 F.3d at 758-59 (quotation omitted).

7            Therefore, in order to bring a claim under California Business & Professions Code

8    § 17200, a plaintiff must have "suffered injury in fact and . . . lost money or property as a result

9    of the unfair competition."  CAL. BUS. & PROF. CODE § 17204.  This statutory limitation requires

10   that a plaintiff allege facts showing that he has suffered losses capable of restitution.  Buckland v.

11   Threshold Enters., Ltd., 155 Cal. App.4th 798, 817 (2007).  Restitution is only possible if the

12   action can "restore to any person any money or property, real or personal, which may have been

13   acquired by means of such unfair competition."  CAL. BUS. & PROF. CODE § 17203.

14           As explained above, plaintiff has failed to state any cognizable claim for relief

15   and thus cannot seek damages in connection with those causes of action.  Therefore, plaintiff has

16   failed to allege any damages which would provide the basis for pursuing a claim under

17   California Business & Professions Code § 17200.  See Kozhayev v. America's Wholesale

18   Lender, No. CIV S-09-2841 FCD DAD PS, 2010 WL 3036001, at *8 (E.D. Cal. Aug. 2, 2010)

19   (dismissing § 17200 claim due to plaintiff's failure to state a claim for relief as to any other

20   claim); Kariguddaiah v. Wells Fargo Bank, N.A., No. C 09-5716 MHP, 2010 WL 2650492, at *7

21   (N.D. Cal. July 1, 2010) (dismissing § 17200 claim due to the plaintiff's failure to state a claim

22   for either breach of contract or wrongful foreclosure upon which the § 17200 claim was based);

23   Powell v. Residential Mortgage Capital, No. C 09-04928 JF (PVT), 2010 WL 2133011, at * 9

24   (N.D. Cal. May 24, 2010) (same); see also Berryman v. Merit Property Mgt. Inc., 152 Cal.

25   App.4th 1544, 1554 (2007) ("Thus, a violation of another law is a predicate for stating a cause of

26   action under" Business & Professions Code § 17200, et seq.); Lazar v. Hertz, Corp., 69 Cal.

14

1  App.4th 1494, 1505 (1999) (Business & Professions Code § 17200, et seq. "borrows violations

2  of other laws . . . and makes those unlawful practices actionable").  Nor has plaintiff alleged any

3  other unfair or fraudulent conduct on the part of defendants that could give rise to a claim under

4  this provision.  See Chavez v. Bank of America, No CV-F-09-2133 OWW/SKO, 2010 WL

5  1854087, at *19-23 (E.D. Cal. May 6, 2010) (discussing the "unfairness," as opposed to

6  "unlawful," prong of California Business & Professions Code § 17200, et seq.)

7          Accordingly, defendants' motion to dismiss should therefore be granted on the

8  ground that plaintiff's allegations fail to state a claim of unlawful and unfair business practices

9  upon which relief may be granted.

10                              LEAVE TO AMEND

11          The undersigned has carefully considered whether plaintiff may be able to cure

12  the defects noted above in a first amended complaint.  In making this assessment, the

13  undersigned has taken into consideration plaintiff's pleadings and all briefing filed in connection

14  with the pending motion.  "Valid reasons for denying leave to amend include undue delay, bad

15  faith, prejudice, and futility."  California Architectural Bldg. Prod. v. Franciscan Ceramics, 818

16  F.2d 1466, 1472 (9th Cir. 1988).  See also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv.

17  Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely

18  given, the court does not have to allow futile amendments).  However, when evaluating the

19  failure to state a claim, the complaint of a pro se plaintiff may be dismissed "only where 'it

20  appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

21  would entitle him to relief.'"  Franklin v. Murphy, 745 F.2d 1221, 1228 (9th Cir. 1984) (quoting

22  Haines v. Kerner, 404 U.S. 519, 521 (1972).  See also Weilburg v. Shapiro, 488 F.3d 1202, 1205

23  (9th Cir. 2007) ("Dismissal of a pro se complaint without leave to amend is proper only if it is

24  absolutely clear that the deficiencies of the complaint could not be cured by amendment.")

25  (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203-04 (9th Cir. 1988)).

26  /////

                                        15

1     Here, it appears for the reasons discussed above, that leave to amend would be

2     futile with respect to plaintiff's claim for the intentional infliction of emotional distress.  It is

3     apparent that plaintiff had no direct contact with defendant Sellers and that defendant Sellers'

4     conduct, even viewed in the light most favorable to plaintiff, could not be characterized as

5     extreme or outrageous as defined by California law, and therefore plaintiff cannot allege facts

6     supporting a claim for the intentional infliction of emotional distress.

7     The court, however, does not find it apparent that plaintiff can allege no set of

8     facts sufficient to support claims for the breach of contract, intentional misrepresentation,

9     negligent misrepresentation, the negligent infliction of emotional distress and/or for unlawful and

10    unfair business practices.  Plaintiff's allegations with respect to the formation of the contract at

11    issue are not entirely clear, nor are the terms of that contract set forth in addendum #2.

12    Moreover, plaintiff has claimed in his opposition to defendants' motion to dismiss that the

13    defendant Sellers also refused to pay $1,100 for a two-year home warranty, a specific term of

14    their counteroffer that was accepted.  In reply, the defendant Sellers do not dispute plaintiff's

15    allegation in this regard, nor do they assert that this term was modified by addendum #1 or

16    addendum #2.  Instead, they merely argue that the evaluation of a complaint pursuant to a motion

17    to dismiss is limited to the allegations found in the complaint.

18    While defendants' argument is well taken at this juncture, based on the allegations

19    found in plaintiff's complaint and the claims advanced in his opposition to the pending motion,

20    the court cannot find that it appears beyond doubt that the plaintiff can prove no set of facts in

21    support of a breach of contract claim which would entitle him to relief.[9]  Similarly, the court

22    cannot find that it is beyond doubt that plaintiff can prove no set of facts in support of his

23    intentional and negligent misrepresentation claims which would entitle him to relief.  Because

24

25         [9]  Plaintiff is directed to the court's discussion above and is admonished that in any first
      amended complaint he elects to file in this action, he should consider including allegations of
26    facts that he asserted for the first time in his opposition to the pending motion to dismiss.

16

1   plaintiff may be able to allege facts sufficient to support such claims, he may also be able to

2   allege facts sufficient to support a claim for relief based on alleged unfair business practices.  See

3   Boland, Inc. v. Rolf C. Hagen (USA) Corp., 685 F. Supp.2d 1094, 1110 (E.D. Cal. 2010) ("An

4   act that breaches a contract may also breach the UCL, but only when the act is unfair, unlawful or

5   fraudulent for some additional reason.").  Finally, the incomplete nature of plaintiff's allegations

6   in support of his negligent infliction of emotional distress claim do not allow the court to find

7   that he could allege no set of facts sufficient to support that claim.

8          Plaintiff's original complaint will therefore be dismissed, and he will be granted

9   leave to file a first amended complaint.  Plaintiff is cautioned however that, if he elects to file an

10  amended complaint, "the tenet that a court must accept as true all of the allegations contained in

11  a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

12  action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, ___ U.S. ___,

13  ___,129 S. Ct. 1937, 1949 (2009).  "While legal conclusions can provide the complaint's

14  framework, they must be supported by factual allegations."  Id. at 1950.  Those facts must be

15  sufficient to push the claims "across the line from conceivable to plausible[.]"  Id. at 1951

16  (quoting Twombly, 550 U.S. at 557).  Plaintiff is further cautioned that any amended complaint

17  he may elect to file should not attempt to re-allege claims found by the court to be not

18  cognizable.

19         Plaintiff is also reminded that any amended complaint he elects to file must be

20  complete in itself without reference to prior pleadings that have been dismissed.  See Local Rule

21  220.  The court cannot refer to prior pleadings in order to make plaintiff's first amended

22  complaint complete.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Moreover, plaintiff's

23  amended complaint must contain factual allegations describing the conduct and events which

24  underlie each of his claims against each defendant named in the pleading.

25  /////

26  /////

17

CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendants' August 16, 2010 motion to dismiss (Doc. No. 5) is granted;

2. Plaintiff's June 30, 2010 complaint (Doc. No. 2-2) is dismissed;

3.  Plaintiff is granted thirty days from the date of service of this order to file an amended compliant that complies with the requirements of the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint"; failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed without prejudice; and

4.  If defendant Federal Home Loan Mortgage Corporation or defendant Homesteps is named as a defendant in any amended complaint plaintiff may elect to file, that defendant shall respond to the pleading within thirty days after it is filed and served.

DATED: March 18, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
orders.pro se/lau2129.mtd

18