1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HUMPHREY LAU,

11          Plaintiff,                    No. CIV S-10-2129 MCE DAD PS

12          v.

13   KATHI PYLMAN, et al,               FINDINGS AND RECOMMENDATIONS

14          Defendants.

15   _____/

16          This matter came before the court on July 8, 2011, for hearing of defendants'

17   Federal Home Loan Mortgage Corporation and Homesteps motion to dismiss plaintiff's amended

18   complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Humphrey Lau, who is

19   proceeding pro se in this action, appeared telephonically on his own behalf.  Attorney Brent

20   Kramer appeared telephonically for defendants Federal Home Loan Mortgage Corporation and

21   Homesteps.  Oral argument was heard, and defendants' motion was taken under submission.

22          Upon consideration of the briefing on file, the parties' arguments at the hearing,

23   and the entire file, the undersigned will recommend that defendants' motion be granted in part.

24                              BACKGROUND

25          Plaintiff commenced this action by filing his original complaint in the Sacramento

26   County Superior Court on June 30, 2010.  On August 9, 2010, defendant Federal Home Loan

1

1  Mortgage Corporation, removed the action to this court pursuant to 28 U.S.C. §§ 1331 and 1442,

2  and 12 U.S.C. § 1452(f).  (Doc. No. 2)

3         On August 16, 2010, counsel for defendants Federal Home Loan Mortgage

4  Corporation and Homesteps filed a motion to dismiss plaintiff's original complaint.  (Doc. No.

5  5.)  On March 21, 2011, the court granted that motion and dismissed the original complaint while

6  granting plaintiff leave to file an amended complaint.  (Doc. No. 18.)  Plaintiff filed his amended

7  complaint on April 19, 2011.  (Am. Compl. (Doc. No. 19.))  On May 11, 2011, defendants

8  Federal Home Loan Mortgage Corporation and Homesteps filed the motion to dismiss plaintiff's

9  amended complaint now pending before the court.  ("MTD" (Doc. No. 20.))  Plaintiff filed an

10  untimely opposition on July 1, 2011, ("Pl.'s Opp'n." (Doc. No. 28)), and defendants filed a reply

11  on July 5, 2011.  ("Defs.' Reply" (Doc. No. 29.))

12                                      PLAINTIFF'S CLAIMS

13         In his amended complaint, plaintiff alleges as follows.  On or about January 5,

14  2010, plaintiff employed Kathi Pylman, a real estate agent with William L. Lyon & Associates,

15  to act as his agent in purchasing the property located at 6304 Gus Way, Elk Grove, California

16  ("Property"), which was owned by defendant Federal Home Loan Mortgage Corporation and

17  defendant Homesteps (collectively "Defendant Sellers").[1]

18         Plaintiff sent defendant Sellers a proposed purchase agreement ("Offer") on

19  January 5, 2010, offering to purchase the property for $244,900.00.  On January 13, 2010,

20  defendant Sellers sent plaintiff a counteroffer that provided, in relevant part, that Sellers would

21  agree to pay up to 3.5% of the purchase price towards plaintiff's closing costs and pay $1,100 for

22  a two-year home warranty insurance policy.  Plaintiff signed the counteroffer on January 15,

23  2010, and gave it to Pylman to transmit to defendant Sellers.

24  _____

25       [1]  Kathi Pylman and William L. Lyon & Associates were named as defendants in
    plaintiff's first amended complaint, but were voluntarily dismissed with prejudice by plaintiff on
26  May 27, 2011.  (Doc. No. 25.)

2

1   On January 27, 2010, plaintiff received from defendant Sellers a seven-page

2   document titled "Homesteps Addendum #1 to Contract of Sale" ("Addendum #1").  Upon

3   examining addendum #1 plaintiff discovered that the document indicated that plaintiff intended

4   to occupy the property even though plaintiff did not intend to do so.  Plaintiff then examined the

5   January 5, 2010 offer and discovered that document also erroneously indicated that plaintiff

6   intended to occupy the property.  At all times plaintiff had informed his agent Pylman that he did

7   not intend to occupy the property.

8   Plaintiff corrected addendum #1 to indicate that he did not intend to occupy the

9   subject property, signed the document and returned it to Pylman on February 1, 2010.  On

10  February 9, 2010, defendant Sellers accepted plaintiff's January 5, 2010 proposed purchase

11  agreement, as modified by defendant's January 13, 2010 counteroffer and addendum #1.  The

12  three signed documents were delivered to plaintiff on February 17, 2010.  Shortly thereafter,

13  plaintiff was informed that because he did not intend to occupy the property, the defendant

14  Sellers would only credit 2% of the purchase price towards plaintiff's closing costs, not the

15  previously agreed to 3.5%.

16  On February 24, 2010, Pylman represented to plaintiff that although the defendant

17  Sellers were now only willing to credit 2% of the purchase price towards his closing costs, they

18  had agreed to pay all escrow fees, title fees and the transfer tax, which in total amounted to

19  $2,390.39.  Plaintiff expressed his displeasure to Pylman over the closing costs dispute but was

20  told that if the purchase of the property did not proceed, he would lose his earnest money deposit.

21  Facing the loss of his earnest money deposit, and relying on the assurance of his

22  agent Pylman that defendant Sellers had agreed to pay the escrow fees, title fees and transfer tax,

23  plaintiff signed all the closing documents sent by the title company for the purchase of the

24  subject property on March 29, 2010.  Among those closing documents was a document titled

25  Buyers Estimated Closing Costs, dated March 30, 2010.  According to that document the

26  /////

3

1  defendant Sellers were to credit plaintiff $6,949.60 towards his closing costs and plaintiff's total

2  amount to close escrow was $60,197.50.

3          On March 31, 2010, Pylman emailed plaintiff a second addendum, ("Addendum

4  #2"), specifying in writing that the defendant Sellers would only credit 2% of the purchase price

5  towards plaintiff's closing costs.  When plaintiff again balked because of his unhappiness with

6  the reduction in the percentage of the purchase price the Sellers were now willing to pay toward

7  closing costs, his agent Pylman told him that the signing of addendum #2 would not change the

8  amount of money plaintiff had to pay under the agreement because the parties had already stated

9  the exact dollar amounts each was going to pay.  Again, relying on his agent Pylman's

10  representations, plaintiff signed addendum #2.[2]

11          On April 3, 2010, plaintiff received another document titled Buyers Estimated

12  Closing Costs.  That document indicated that the defendant Sellers were only to credit $4,898

13  toward plaintiff's closing costs and that the total amount due from plaintiff to close escrow was

14  now $63,626.69.  Plaintiff again protested to Pylman.  This time Pylman told plaintiff that

15  nothing could be done about the change in terms and that if plaintiff did not pay the additional

16  closing costs he would not be able to purchase the property and would lose his earnest money

17  deposit.  Feeling pressured and exhausted, plaintiff reluctantly wired the additional money to the

18  title company on the morning of April 5, 2010.  However, later that afternoon the defendant

19  Sellers indicated that they were now refusing to pay the escrow fees, transfer tax and the $1,100

20  home warranty.  Plaintiff was told that he needed to wire an additional $1,167.88 to complete the

21  purchase and that he would have to pay all escrow fees and transfer tax, or the transaction would

22  not take place.  This time, plaintiff refused to pay the additional costs and the purchase fell

23  through.

24  /////

25

26          [2]  Though plaintiff attached various documents to his amended complaint, he did not
       attach a copy of addendum #2.

1         Based on these factual allegations, plaintiff alleges claims against defendant

2   Sellers for breach of contract, "damage," and the intentional and negligent infliction of emotional

3   distress. (Am. Com (Doc. No. 19) at 1-17.)[3]

4         DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

5         The defendant Sellers seek dismissal of plaintiff's amended complaint with

6   prejudice. In moving to dismiss the defendant Sellers argue that: (1) they did not breach any

7   contract; (2) plaintiff's damage claim is not a recognized claim; (3) plaintiff's intentional

8   infliction of emotional distress claim fails because there is no extreme or outrageous conduct

9   alleged; and (4) plaintiff's negligent infliction of emotional distress claim fails because they did

10   not owe plaintiff a duty of care. (MTD (Doc. No. 20) at 9-18.)

11         LEGAL STANDARDS APPLICABLE TO DEFENDANT'S MOTION

12         The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

13   sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

14   1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

15   sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901

16   F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to

17   relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus,

18   a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the

19   plaintiff's claims, even if the plaintiff's allegations are true.

20         In determining whether a complaint states a claim on which relief may be granted,

21   the court accepts as true the allegations in the complaint and construes the allegations in the light

22   most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

23   United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In general, pro se complaints are held to less

24   stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519,

25

26      [3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  The court is permitted to consider material which is properly submitted as part of the complaint, documents not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a complaint must give the defendant fair notice of the plaintiff's claims and must allege facts that state the elements of each claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2); Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  The plaintiff must allege with at least some degree of particularity overt acts which the defendants engaged in that support the plaintiff's claims.  Jones, 733 F.2d at 649.  A complaint must also contain "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought."  Fed. R. Civ. P. 8(a)(1) & 8(a)(3).

ANALYSIS

I.  Breach of Contract

The defendant Sellers argue that plaintiff's breach of contract claim must be dismissed for failing to state a claim upon which relief can be granted.  Specifically, defendants contend that in his amended complaint plaintiff acknowledges that he agreed to accept defendants' offer of paying 2% of the sales price towards plaintiff's closing costs.  Moreover, defendants assert that plaintiff's amended complaint alleges only that his own agent Pylman told plaintiff that the defendant Sellers would pay the transfer tax and escrow fees but does not allege that the defendant Sellers actually agreed to pay those amounts as part of the offer, counteroffer, addendum #1 or addendum #2.  Accordingly, the defendant Sellers argue that base upon his own allegations plaintiff has failed to allege a claim for breach of contract against them.  (MTD (Doc. No. 20) at 10-11.)

1    Under California law, to state a claim for breach of contract, plaintiff must allege

2 facts showing: 1) the existence of the contract; 2) plaintiff's performance or excuse for

3 nonperformance of the contract; 3) defendant's breach of the contract; and 4) resulting damages.

4 Recihert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968); Armstrong Petrol Corp. v. Tri Valley

5 Oil & Gas Co., 116 Cal. App.4th 1375, 1391 n.6 (2004).

6    Here plaintiff has alleged in his amended complaint that the defendant Sellers

7 breached the contract in question by refusing to pay 3.5% of the sales price toward the closing

8 costs associated with the sale.  However, plaintiff also specifically acknowledges in his amended

9 complaint that he, in fact, "signed [addendum #2] to change closing cost credit from 3½ % to 2%

10 of the selling price . . . ."  (Am. Compl. (Doc. No. 19) at 5.)  Accordingly, plaintiff has failed to

11 state a cognizable breach of contract claim with respect to the percentage of the sale price to be

12 contributed to the closing costs and defendants' motion to dismiss should be granted as to this

13 aspect of plaintiff's breach of contract claim.

14    However, plaintiff also alleges that on more than one occasion he was advised by

15 his agent Pylman that as part of the transaction the defendant Sellers had agreed to pay for all

16 escrow fees, transfer tax and owners title fees.  (Id. at 4-5.)  Such allegations by a pro se plaintiff

17 are sufficient to survive a motion to dismiss for failure to state a breach of contract claim.[4]

18 Accordingly, defendants' motion to dismiss this aspect of plaintiff's breach of contract claim

19 should be denied.

20 /////

21

22    [4]  Defendants argue that no documents reflect an agreement on their part to pay the
transfer tax, title fees or escrow fees.  The undersigned declines to determine the terms of the

23 parties' agreement at the motion to dismiss stage.  Plaintiff has alleged that the defendant Sellers
breached the contract by first agreeing to pay such taxes and fees and then, at closing, reneging

24 on that agreement.  It may well be that plaintiff's belief as to the terms of the agreement was
based on misrepresentations made to him by his own agent or on his own misunderstanding of

25 what his agent was communicating to him.  However, such factual disputes are best resolved
based upon the evidence offered by the parties either at the summary judgment stage of these

26 proceedings or at trial.

1    Similarly, plaintiff has alleged that pursuant to their written counteroffer, the

2    defendant Sellers agreed to pay $1,100 for two years of home warranty insurance but that before

3    the purchase was completed they reneged on that promise.  Thereafter plaintiff refused to

4    continue with the purchase.  (Am. Compl. (Doc. No. 19) at 3-6.)  In moving to dismiss,

5    defendants argue that this is an inadequately pled claim for breach of contract by anticipatory

6    repudiation.  Specifically, defendants argue that plaintiff has failed to allege that: (1) he had the

7    ability to perform under the contract; and (2) that defendants distinctly, unequivocally and

8    absolutely, refused to pay for the home warranty insurance.  (MTD (Doc. No. 20) at 11-12.)

> Anticipatory breach occurs when one of the parties to a bilateral
> contract repudiates the contract. The repudiation may be express or
> implied.  An express repudiation is a clear, positive, unequivocal
> refusal to perform; an implied repudiation results from conduct
> where the promisor puts it out of his power to perform so as to
> make substantial performance of his promise impossible.
>
> When a promisor repudiates a contract, the injured party faces an
> election of remedies: he can treat the repudiation as an anticipatory
> breach and immediately seek damages for breach of contract,
> thereby terminating the contractual relation between the parties, or
> he can treat the repudiation as an empty threat, wait until the time
> for performance arrives and exercise his remedies for actual breach
> if a breach does in fact occur at such time.  However, if the injured
> party disregards the repudiation and treats the contract as still in
> force, and the repudiation is retracted prior to the time of
> performance, then the repudiation is nullified and the injured party
> is left with his remedies, if any, invocable at the time of
> performance.

19   Ferguson v. City of Cathedral City, 197 Cal. App.4th 1161, 1168-69 (2011).

20   Here, plaintiff has alleged that he and the defendant Sellers agreed, as evidenced

21   by Sellers' written and signed counteroffer, that if plaintiff purchased the subject property at the

22   price agreed upon, Sellers would pay $1,100 for two years of home warranty insurance.  After the

23   parties entered into this agreement, and after plaintiff had transferred $63,626.69 to the title

24   company to complete the purchase of the property, plaintiff was informed that Sellers were

25   refusing to pay the home warranty insurance.  Plaintiff interpreted this information as an

26   indication that defendant Sellers had "refused to perform the terms under the purchase contract

8

1   and the associated addendums."  (Am. Compl. (Doc. No. 19) at 3-6.)  Accepting as true the

2   allegations in the amended complaint and construing them in the light most favorable to plaintiff,

3   plaintiff was performing under the terms of the parties' agreement when defendant Sellers

4   expressly repudiated a term of that agreement.  See Mammoth Lakes Land Acquisition, LLC v.

5   Town of Mammoth Lakes, 191 Cal. App.4th 435, 467 (2010) (quoting Steelduct Co. v. Henger-

6   Seltzer Co., 26 Cal.2d 634, 646 (1945) ("'Annexing an unwarranted condition to an offer of

7   performance is a refusal to perform.'")

8           Sellers argue that plaintiff has failed to allege a "distinct, unequivocal, and

9   absolute" refusal to perform by Sellers because plaintiff's amended complaint "merely alleges

10  that Plyman (not Sellers) stated that Sellers would not pay for the home warranty insurance" and

11  in this regard his allegations are therefore nothing more than mere speculation based on a

12  statement made by a third party.[5]  (MTD (Doc. No. 20) at 12.)  However, it is unclear how

13  plaintiff could have communicated directly with the defendant Sellers to confirm an anticipatory

14  repudiation, since the parties were each represented by real estate agents and the defendant

15  Sellers are each sizeable institutions.  Nor is it clear that such direct communication of the

16  repudiation was necessary.  See Daum v. Superior Court, Sutter County, 228 Cal. App.2d 283,

17  287 (1964) ("California recognizes an action for anticipatory breach . . . and that a definite and

18  unconditional repudiation of the contract by the promisor *communicated* to the promisee, being a

19  breach of the contract, creates an immediate right of action even though it takes place long before

20  the time prescribed for the promised performance and before conditions specified in the contract

21  have ever occurred.") (internal citations omitted) (emphasis added).

22          Moreover, whether or not Pylman's statement to plaintiff regarding defendants'

23  repudiation was truthful and accurate is a factual issue which the court is unable to resolve at this

24  /////

25

26          [5]  Defendants advances this argument without citation to any on point legal authority.

                                                9

1   stage of the proceedings.[6]  See Central Valley General Hosp. v. Smith, 162 Cal. App.4th 501,

2   519 n.10 (2008) ("On remand, whether the conduct of Smith and Affiliates was an implied

3   repudiation is a question for the trier of fact."); Mitchell v. Marklund, 238 Cal. App.2d 398,

4   405-06 (1965) (quoting Sonnicksen v. Sonnicksen, 45 Cal. App.2d 56, 57 (1941) ("'Repudiation

5   is a question of fact and intent.'"); Singh v. Burkhart, 218 Cal. App.2d 285, 293 (1963)

6   ("Repudiation is a question of fact to be determined from the evidence."); Eastwood Homes, Inc.

7   v. Hudson, 161 Cal. App.2d 532, 539 (1958) ("Repudiation is a question of intent to be

8   determined ordinarily as a fact.").

9          For the reasons stated above, the undersigned finds that defendants' motion to

10  dismiss should be denied with respect to plaintiff's claim that the defendant Sellers' refusal to

11  pay $1,100 for two years of home warranty insurance constituted a breach of contract.

12  II.  Damage

13         Defendants also contend that plaintiff's separate cause of action for "damage"

14  should be dismissed for failure to state a claim upon which relief can be granted.  Specifically,

15  defendants argue that a claim for damage is not a recognized claim under California law.

16  Moreover, defendants argue that even if the court were to construe plaintiff's claim as some other

17  recognized cause of action, plaintiff has failed to allege a wrongful act on the part of the

18  defendant Sellers with respect to such a claim.  (MTD (Doc. No. 20) at 13-14.)

19         As noted above, to state a claim on which relief may be granted the plaintiff must

20  allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.

21  Twombly, 550 U.S. 544, 570 (2007).  In considering whether a complaint states a cognizable

22  claim, the court accepts as true the material allegations in the complaint and construes the

23  allegations in the light most favorable to the plaintiff.  Hishon, 467 U.S. at 73; Hosp. Bldg. Co. v.

24

25         [6]  In this regard, plaintiff asserts in his opposition to defendants' motion to dismiss that
    the defendants also "communicated their refusal to pay for the home warranty not only through
26  their agent but also to the escrow officer."  (Pl.'s Opp.'n. (Doc. No. 28) at 6.)

10

1    Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love, 915 F.2d at 1245.  Pro se pleadings are

2    held to a less stringent standard than those drafted by lawyers.  Haines, 404 U.S. at 520.

3    However, the court need not accept as true conclusory allegations, unreasonable inferences, or

4    unwarranted deductions of fact.  W. Mining Council, 643 F.2d at 624.

5             The minimum requirements for a civil complaint in federal court are as follows:

6             A pleading which sets forth a claim for relief . . . shall contain (1) a
              short and plain statement of the grounds upon which the court's
7             jurisdiction depends . . . , (2) a short and plain statement of the
              claim showing that the pleader is entitled to relief, and (3) a
8             demand for judgment for the relief the pleader seeks.

9    Fed. R. Civ. P. 8(a).

10            Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a

11   complaint must give the defendant fair notice of the plaintiff's claims and allege facts that state

12   the elements of each claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2); Jones, 733 F.2d at

13   649.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

14   cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertions' devoid

15   of 'further factual enhancements.'"  Ashcroft v. Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949

16   (2009) (quoting Twombly, 550 U.S. at 555, 557.  A plaintiff must allege with at least some

17   degree of particularity overt acts which the defendants engaged in that support the plaintiff's

18   claims.  Jones, 733 F.2d at 649.

19            It is clear from reading the allegations of plaintiff's amended complaint that

20   plaintiff believes that the defendant Sellers' delayed release of most of his earnest money deposit,

21   and retention of $1,000 of that deposit, because plaintiff would not sign a release of liability form

22   was unfair and unlawful.  However, plaintiff's allegations in this respect are devoid of any

23   reference to any statutory provision or legal claim upon which relief can be granted.  (Am.

24   Compl. (Doc. No. 19) 10-14.)  The undersigned finds that plaintiff's stand-alone "damage" cause

25   /////

26   /////

11

1   of action fails to state a separate cognizable claim.[7]  Defendants' motion to dismiss should

2   therefore be granted as to this claim.

3   III.  <u>Intentional Infliction of Emotional Distress</u>

4          Defendants next argue that plaintiff's claim for the intentional infliction of

5   emotional distress must be dismissed for failure to state a claim upon which relief can be granted.

6   Specifically, defendants argue that this claim must be dismissed because there are no allegations

7   in the amended complaint of extreme and outrageous conduct by the defendant Sellers.

8   Defendants contend that plaintiff's intentional infliction of emotional distress claim is identical

9   to the claim found in plaintiff's original complaint, which the court previously found defective.

10  (MTD (Doc. No. 20) at 14-16.)

11         To state a cognizable claim for the intentional infliction of emotional distress

12  under California law a plaintiff must allege: (1) extreme and outrageous conduct by the defendant

13  with the intention of causing, or reckless disregard of the probability of causing, emotional

14  distress; (2) plaintiff's suffering of severe or extreme emotional distress; (3) and actual and

15  proximate causation of the emotional distress by the defendant's outrageous conduct.  <u>Hughes v.</u>

16  <u>Pair</u>, 46 Cal. 4th 1035, 1051 (2009); <u>Christensen v. Superior Court</u>, 54 Cal.3d 868, 903 (1991);

17  <u>Cervantez v. J.C. Penney Co.</u>, 24 Cal.3d 579, 593 (1979); <u>see</u> <u>also</u> <u>Corales v. Bennett</u>, 567 F.3d

18  554, 571 (9th Cir. 2009).

19  /////

20

21         [7]  In his untimely opposition to defendants' motion, plaintiff has included his argument
    with respect to this claim under the breach of contract heading.  Therein, plaintiff asserts that the
22  defendant Sellers' refusal to return all of his earnest money deposit was also a breach of the
    terms of the parties' written agreement.  (Pl.'s Opp.'n. (Doc. No. 28) at 5-6.)  Plaintiff, however,
23  has raised this argument for the first time in his untimely opposition.  "The focus of any Rule
    12(b)(6) dismissal . . . is the complaint.  This precludes the consideration of new allegations that
24  may be raised in plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6)."
    <u>Lopez v. Wachovia Mortgage</u>, No.2:09-CV-01510-JAM-DAD, 2009 WL 3365864, at *2 (E.D.
25  Cal. Oct. 15, 2009).  Of course, the dismissal of this cause of action does not impact plaintiff's
    prayer for relief seeking the award of damages in connections with the defendants' alleged breach
26  of the contract between the parties.

1           Here plaintiff has failed to state a cognizable claim for intentional infliction of

2 emotional distress because his amended complaint does not allege facts suggesting that any

3 conduct engaged in by the defendant Sellers was extreme or outrageous.  See Sabow v. United

4 States, 93 F.3d 1445, 1455 (9th Cir. 1996) (affirming dismissal of intentional infliction of

5 emotional distress claim because military investigators' decision to question the plaintiff widow

6 on the morning she found her husband's body, while not "the defendant officers' finest hour,"

7 was not so "extreme and outrageous as to be actionable under California law); Davidson v.

8 Westminster, 32 Cal.3d 197, 209 (1982) (For purposes of such a claim, "[c]onduct to be

9 outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized

10 community.")  Nor does plaintiff's amended complaint allege specific facts showing that the

11 defendant Sellers acted with the requisite intent or that plaintiff suffered severe or extreme

12 emotional distress as a result of the specific conduct alleged.  Indeed, it appears from the facts

13 alleged in his amended complaint that plaintiff's only communication with the defendant Sellers

14 was through third-parties and that they had no direct contact with one another.  Defendants'

15 motion to dismiss should therefore be granted on the ground that plaintiff's allegations fail to

16 state a claim for the intentional infliction of emotional distress upon which relief may be granted.

17 V.  Negligent Infliction of Emotional Distress

18           Finally, defendants contend that plaintiff's claim for the negligent infliction of

19 emotional distress must be dismissed for failure to state a claim upon which relief can be granted.

20 Specifically, defendants argue that this claim is subject to dismissal because plaintiff has not

21 alleged any duty owed by the defendant Sellers to plaintiff.  (MTD (Doc. No. 20) at 17-18.)

22           California does not recognize an independent cause of action for the negligent

23 infliction of emotional distress.  The California Supreme Court "[has] repeatedly recognized that

24 the *negligent* causing of emotional distress is not an independent tort, but the tort of *negligence*."

25 Burgess v. Superior Court, 2 Cal.4th 1064, 1072 (1992) (internal citations and quotations

26 omitted) (emphasis in original).  See also Cramer v. Consolidated Freightways, Inc., 209 F.3d

1    1122, 1133 (9th Cir. 2000) ("The tort of negligent infliction of emotional distress is simply a

2    negligence claim alleging that the defendant breached a duty to protect the plaintiff's mental

3    well-being."); Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 984 (1993) ("[T]here is no

4    independent tort of negligent infliction of emotional distress."). "The elements of a cause of

5    action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach

6    of such legal duty; [and] (c) the breach is the proximate or legal cause of the resulting injury."

7    Ladd v. County of San Mateo, 12 Cal.4th 913, 917 (1996) (internal citations, quotations, and

8    emphasis omitted). See also Truong v. Nguyen, 156 Cal. App. 4th 865, 875 (2007); Corales, 567

9    F.3d at 572. "The existence of a duty is the threshold element of a negligence cause of action."

10   Friedman v. Merck & Co., 107 Cal. App.4th 454, 463 (2003). "The determination of duty is a

11   question of law." Hall v. Superior Court, 108 Cal. App.4th 706, 711 (2003).

12         Here, plaintiff's amended complaint fails to state a cognizable negligence claim

13   because it does not allege facts suggesting that the defendant Sellers owed him any duty, let alone

14   facts suggesting a breach of any such duty. Plaintiff's amended complaint merely alleges in a

15   conclusory manner that defendant Sellers "are expected to be fair and honest" and had a "duty to

16   use care in handling the transaction in a legal way and to protect plaintiff's mental being." (Am.

17   Compl. (Doc. No 19) at 16-17.) In opposing dismissal plaintiff has cited no legal authority in

18   support of a separate negligent infliction of emotional distress claim.

19         Under California law, "with the exception of bad faith insurance cases, a breach of

20   the covenant of good faith and fair dealing permits a recovery solely in contract." Fairchild v.

21   Park, 90 Cal. App.4th 919, 927 (2001). See also Kransco v. American Empire Surplus Lines Ins.

22   Co., 23 Cal.4th 390, 400 (2000) ("Because the covenant [of good faith and fair dealing] is a

23   contract term, in most cases compensation for its breach is limited to contract rather than tort

24   remedies."). Nor is there a "duty to avoid negligently causing emotional distress to another."

25   Potter, 6 Cal.4th at 984.

26   /////

14

1    The court notes that under California law:

2    Tort damages have been permitted in contract cases where a breach
     of duty directly causes physical injury . . . for breach of the
3    covenant of good faith and fair dealing in insurance contracts . . .
     for wrongful discharge in violation of fundamental public policy . .
4    . or where the contract was fraudulently induced.

5                                     * * *

6    Generally, outside the insurance context, a tortious breach of
     contract ... may be found when (1) the breach is accompanied by a
7    traditional common law tort, such as fraud or conversion; (2) the
     means used to breach the contract are tortious, involving deceit or
8    undue coercion or; (3) one party intentionally breaches the contract
     intending or knowing that such a breach will cause severe,
9    unmitigable harm in the form of mental anguish, personal hardship,
     or substantial consequential damages.

10

11   Erlich v. Menezes, 21 Cal.4th 543, 551-54 (1999).  "In each of these cases, the duty that gives

12   rise to tort liability is either completely independent of the contract or arises from conduct which

13   is both intentional and intended to harm."  (Id. at 552.)  As indicated above, here plaintiff has

14   failed to adequately allege in his amended complaint the duty the defendant Sellers owed to him

15   and has failed to allege tortious conduct that was either intentional or intended to harm.

16          Accordingly, for the reasons stated above, defendants' motion to dismiss

17   plaintiff's negligent infliction of emotional distress claim should be granted.

18                                  CONCLUSION

19          IT IS HEREBY RECOMMENDED that:

20          1.  Defendants' May 11, 2011 motion to dismiss (Doc. No. 20) be denied as to

21   plaintiff's breach of contract claim with respect to the defendant Sellers' alleged reneging on

22   their contractual agreement to pay all escrow fees, transfer taxes, title fees and $1,100 for two

23   years of home warranty insurance; and

24          2.  Defendants' May 11, 2011 motion to dismiss (Doc. No. 20) be granted in all

25   other respects.

26   /////

                                        15

1        These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6  shall be served and filed within seven days after service of the objections.  The parties are

7  advised that failure to file objections within the specified time may waive the right to appeal the

8  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: December 20, 2011.

10

11

12  DAD:6
     orders.pro se/lau2129.mtd2

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

16